UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DIVERSIFIED GROUP, LLC                              CIVIL ACTION

VERSUS                                              NO. 12-1161

LOUISIANA CARRIERS, INC. et al.                     SECTION "F"

ORDER AND REASONS

Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion is DENIED.

Background

This case arises out of an alleged allision between a vessel and a wharf.

On or about March 29, 2012, the M/V TRISTEN, a vessel owned and operated by LA Carriers, LLC,[1] attempted to moor alongside the Andry Street Wharf in New Orleans.  In doing so, the vessel allegedly caused damage to the wharf.  It is claimed it chipped concrete, caused a broken pedestal and a missing bollard.  On May 9, 2012, Diversified Group, LLC sued LA Carriers and the M/V TRISTEN, in rem, invoking the Court's admiralty jurisdiction, and alleging claims of negligence.  On May 22, 2012, Dixie Marine, Inc. filed a first amended complaint, identifying itself as the proper plaintiff.  Among other things, Dixie Marine seeks to

---

[1] Initially, plaintiff incorrectly identified LA Carriers, LLC as Louisiana Carriers, Inc.

1

recover the cost of damages to the wharf, dock fees, loss of use, and punitive damages.

Defendants, LA Carriers and the M/V TRISTEN, now move for summary judgment, asserting that Dixie Marine has no cause of action because it was not the owner or the lessee of the wharf at the time of the accident.

## Legal Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## I. Discussion

Defendants contend that summary judgment is appropriate because no genuine issue of material fact exists as to whether plaintiff was owner or lessee of the Andry Street Wharf, and, therefore, plaintiff cannot recover damages.  The Court does not agree.

*A.*

The U.S. Supreme Court, in Robins Drydock & Repair Co. v. Flint, established the basic maritime tort principle that a contracting party must have a proprietary interest to sue an injuring party for unintentional tortious conduct.  275 U.S. 303, 308-09 (1927).  "[A] tort to the . . . property of one man does not make the tort-feasor liable to another merely because the

3

injured person was under a contract with that other unknown . . . ."  Id. at 309.  Guided by the U.S. Supreme Court, the Fifth Circuit has underscored the significance of Robins in State of Louisiana ex rel. Guste v. M/V Testbank, noting that the proprietary interest requirement is a "a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability." 752 F.2d 1019, 1022 (5th Cir. 1985).  "Thus," the Fifth Circuit has said, "Robins and Testbank preclude a party whose rights derive from a contractual, business arrangement from suing in tort a party with whom it has no such relationship if it cannot show the requisite level of interest in the damaged property itself."  Tex. E. Transmission Corp. v. McMoran Offshore Exploration Co., 877 F.2d 1214, 1224 (5th Cir. 1989).  The Fifth Circuit has employed three criteria to evaluate whether a party has a proprietary interest:  (1) actual possession or control, (2) responsibility for repair, and (3) responsibility for maintenance.  Id. at 1225; see also Louisville & Nashville R. Co. v. M/V Bayou Lacombe, 597 F.2d 469, 474 (5th Cir. 1979).

*B.*

It is undisputed here that Dixie Marine is not the owner of the Andry Street Wharf.  Therefore, the question becomes whether Dixie Marine's lease with the Port of New Orleans is sufficient to provide Dixie Marine with a proprietary interest in the wharf to state a claim for property and economic damages.

4

As a threshold matter, defendants contend that Dixie Marine is not the lessee of the Andry Street Wharf, because the only lease provided to them is a 2007 lease that lists Dixie Machine Welding & Metal Works, Inc. as the lessee.  Defendants are correct in that Dixie Marine and Dixie Machine are separate and distinct entities; however, a 2009 lease entered into between Dixie Marine and the Port of New Orleans specifically mentions the 2007 lease between Dixie Machine and the Port of New Orleans, indicating that the 2007 lease "shall terminate . . . the month of October 2009."[2]  The 2009 lease, in which Dixie Marine is the lessee, commenced November 1, 2009, and ended midnight on October 31, 2010 (the primary term).  Pursuant to the terms of the lease, Dixie Marine had the option to extend the lease for two additional one-year periods, which would result in a lease termination date of October 31, 2012 (the extended term).  After

---

[2] It is unclear as to why plaintiff has failed to provide defendants with a copy of the 2009 lease before now.  Defendants contend that they were forced to subpoena the Port of New Orleans to produce a copy of the lease because plaintiff refused to do so.  In response, the Port turned over a copy of the 2007 lease only, which, based on the language of the 2007 lease, prompted defendants to file the current motion for summary judgment.  The Court reminds plaintiff's counsel of 28 U.S.C. § 1927, which states:
> Any attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C § 1927.

the primary and extended terms, Dixie Marine also had the option to extend the lease for an additional five-year period, or, until November 2017.

Defendants assert that Dixie Marine has failed to provide evidence that it was the lessee on March 29, 2012, because there is no proof that Dixie Marine opted to enter the extended term. Dixie Marine, however, provides the affidavit of Thomas Kronenberger, Vice-President of Dixie Marine, who states that the 2009 lease agreement was "the lease agreement in place between Dixie Marine and the Port of New Orleans on the date that M/V TRISTEN and her barge caused damage to the wharf."  See Donaghey, 974 F.2d at 649 (noting that competent summary judgment evidence includes affidavits); see also Fed. R. Civ. P. 56(c).  In addition, Dixie Marine provides a copy of the 2012 amendment to the 2009 lease that purports to elect the five-year extension, which, based on the language of the 2009 lease, appears to be available only after the lessee has exhausted the primary and extended terms.  Based on the record before it, the Court cannot find that Dixie Marine was not the lessee at the time of the alleged allision.  The Court now examines the three factors articulated by the Fifth Circuit in Texas Eastern to determine whether this lease provides Dixie Marine with the requisite

proprietary interest.[3]

The first Texas Eastern factor addresses actual possession or control. Plaintiff points to paragraph 8(B) of the 2009

---

[3] Defendants also contend that the standing requirement is stricter to state a claim for property damages as opposed to economic damages: only the wharf owner can state a claim for property damage, whereas a lessee with a proprietary interest can state a claim for economic damages. For support, defendants cite Standard Oil Co. v. Southern Pacific Co., in which the U.S. Supreme Court stated: "Where property is destroyed by wrongful act, **the owner** is entitled to its money equivalent, and thereby to be put in as good position pecuniarily as if his property had not been destroyed." 268 U.S. 146, 155 (1924) (emphasis added). The Court does not disagree with this basic premise; however, the Port of New Orleans, as owner of the wharf, entered into a lease with Dixie Marine, in which it agreed that the lease would govern the responsibilities and rights of the participants, and that Dixie Marine "**shall . . . repair, replace, or restore** any and all of **the Leased Premises which may become the subject of** loss, **damage** or destruction." Further, the lease mandates:
> In the event of any loss, damage, or destruction to the Leased Premises caused by third parties, whether partial or not, it **shall be the obligation of Lessee to take the necessary legal steps** immediately **to protect the rights of Lessee and Board** against such third parties for the recovery of damages.

The Court is unpersuaded by defendants' argument that a lessee is precluded from asserting a claim for property damages, because Dixie Marine is obligated to restore the Port of New Orleans to "as good position pecuniarily as if his property had not been destroyed." Standard Oil Co., 268 U.S. at 155.

Assuming a lessee can state a claim for property damages, the defendants contend that the lessee must actually pay for the damages *before* suing the alleged tortfeasor. This assertion is again without merit; plaintiff will have the burden of proving its damages with reasonable certainty at trial, which can be done through various forms of evidence. According to the plaintiff's answers to defendants' interrogatories, plaintiff has provided defendants with an estimate that was prepared by Durward Dunn. (The Court notes that the record indicates that plaintiff attached this estimate to its answers to defendants' interrogatories, however, the estimate was not provided to the Court.)

lease, which states:

> ***Lessee,*** from the time of its occupancy and until the Leased Premises are vacated by Lessee, ***shall assume sole liability for the condition of the Leased Premises*** as well as of any constructions, utilities and other improvements which may be built or placed on the Leased Premises during the term of this Lease. ***Lessee acknowledges that, during the term of this Lease, it shall exercise complete control*** or "GARDE" ***over the Leased Premises***.

See Rec. Doc. 26-1 at 5 (emphasis added).  Although the cited provision does establish that Dixie Marine has control over the *conditions* of the wharf, the Court notes that Dixie Marine "shall use the Leased Premises solely for the purpose of ship repair, maintenance, berthing and associated activities. . . . Lessee shall not use the Leased Premises for any other purpose without first obtaining the written approval of the Board acting through its President and Chief Executive Officer in his discretion."  See Rec Doc. 26-1 at 3-4.  Therefore, the Port of New Orleans retains the authority to instruct Dixie Marine on the wharf's acceptable uses, and Dixie Marine's control appears more limited to the condition of the property.

The fact that Dixie Marine does not have complete control over the premises is not dispositive, because the Court finds the second and third Texas Eastern factors—responsibility for repair and maintenance—weigh in favor of a proprietary interest.  The lease states:

8

    7.   MAINTENANCE AND REPAIRS; DREDGING

       (A) ***Lessee shall be responsible for and shall at its own cost, risk and expense perform and pay all costs of maintenance and repairs of the Leased Premises***, including but not limited to the wharf, wharf substructure, the fender system and any facilities and equipment situated or to be situated thereon . . . . During the term of the Lease, ***Board shall have no responsibility whatsoever to perform any maintenance or repair work*** on the Leased Premises.

       . . . .

    8.   CONDITION OF LEASED PREMISES

       . . . .

       (B) ***Lessee, from the time of its occupancy and until the Leased Premises are vacated by Lessee, shall assume sole liability for the condition of the Leased Premises*** as well as of any constructions, utilities and other improvements which may be built or placed on the Leased Premises during the term of this Lease. Lessee acknowledges that, during the term of this Lease, it shall exercise complete control or "GARDE" over the Leased Premises.

    9.   LOSS, DAMAGE AND DESTRUCTION

       . . . .

       (B) . . . . ***Lessee agrees that it shall at its own cost, risk and expense promptly and with due diligence repair, replace, or restore any and all of the Leased Premises*** which may become the subject of loss, damage or destruction . . . .

       . . . .

       (E) ***In the event of any loss, damage, or destruction to the Leased Premises caused by third parties***, whether partial or not, ***it shall be the obligation of Lessee to take the necessary legal steps immediately to protect the rights of Lessee and Board*** against such third parties for the recovery of damages. . . .

<u>See</u> Rec. Doc. 26-1 at 4-6.  In sum, these provisions establish

that Dixie Marine is obliged to pay for "all costs of maintenance and repairs" and that the Board of Commissions for the Port of New Orleans "shall have no responsibility whatsoever to perform maintenance or repair work." Dixie Marine assumes "sole liability" for the conditions of the property and must "at its own cost, risk and expense" repair, replace, or restore "any and all" of the leased property. The lease also mandates that in the event of any damage to the wharf caused by third parties, it "shall be the obligation" of Dixie Marine to take the necessary legal steps to protect the rights of Dixie Marine and the Port of New Orleans. The plain language of the lease expressly allocates responsibility for both repair and maintenance to Dixie Marine, supporting the Court's finding that Dixie Marine has a proprietary interest in the wharf. Cf. IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193, 1194 (5th Cir. 1993) (upholding the district court's finding that the lessee did not have a proprietary interest because the lessee did not have the responsibility to repair any damage); Tex. E., 877 F.2d at 1225 (noting that the lessee did not have a proprietary interest because the lease stated that the lessor was "fully responsible" for the maintenance and repair of the leased pipeline).

Accordingly, the Court finds that Dixie Marine has the requisite proprietary interest to state a claim, and summary

judgment is inappropriate.[4]  IT IS HEREBY ORDERED that defendants' motion for summary judgment is DENIED.

New Orleans, Louisiana, May 15, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] Defendants also contend that plaintiff cannot state a claim for docking fees, because "plaintiff has produced no evidence that it is entitled to collect such [docking] fees.  No evidence of plaintiff's ownership or lawful possession of the Wharf has ever been produced by plaintiff."  Again, for reasons unknown to the Court, plaintiff has failed to provide defendants with a copy of the 2009 lease before the filing of this motion.

11